**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MERSON, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>        Defendants. | Case No.: 1:21-cv-08752-PAC<br><br>Hon. Paul A. Crotty<br><br>**MICHAEL KRUEGER'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR LEAD PLAINTIFF IN THE TENCENT MUSIC ENTERTAINMENT GROUP CLASS ACTION (DKT. NO. 19)** |
| THIS DOCUMENT RELATES TO:<br><br>        1:21-cv-08413<br>        1:21-cv-10286<br>        1:21-cv-08618<br>        1:21-cv-08897<br>        1:21-cv-10791<br>        1:22-cv-00169 | |

Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway
New York, N.Y. 10006
T: (212) 363-7500
E: aapton@zlk.com

*Attorneys for Michael Krueger and*
*Proposed Lead Counsel for the Tencent*
*Music Entertainment Group Class*

## I.    PRELIMINARY STATEMENT

Movant Michael Krueger respectfully requests that the Court:

1)    Appoint Mr. Krueger and his counsel, Levi & Korsinsky, LLP, as the lead plaintiff and lead counsel in the *Tencent* action; and

2)    Endorse the proposed Joint Prosecution Agreement ("JPA") (attached to the accompanying proposed order) for use in coordinating the several related *Archegos Capital Management* actions.[1]

Mr. Krueger and Levi & Korsinsky should be appointed as the lead plaintiff and lead counsel in the *Tencent* action. Mr. Krueger initially moved for lead plaintiff on December 27, 2021. Dkt. No. 19. With an investment of over $1.1 million, Mr. Krueger had the "largest financial interest" in the action. In addition, Mr. Krueger also demonstrated his typicality and adequacy to represent the proposed class of Tencent shareholders by, *inter alia*, providing details about his educational and professional background in the form of a sworn declaration. Mr. Krueger remains committed to representing the shareholders in the *Tencent* action and, as requested, will do so in cooperation with the shareholder classes in the other *Archegos Capital Management* actions. This commitment is supported by Mr. Krueger's extensive professional experience, which includes the supervision and coordination of numerous construction crews across hundreds of projects during his career. *See* Supplemental Declaration of Michael Krueger dated March 30, 2022, ¶¶3-4.

To coordinate the various *Archegos Capital Management* actions, Mr. Krueger and his counsel propose that counsel on behalf of each Issuer Action enter into the attached JPA. The JPA provides a structured approach to coordinating the various actions by, among other things,

---

[1] The *Archegos Capital Management* actions refer to: *Tan*, No. 1:21-cv-08413 (Vipshop); *Merson*, No. 1:21-cv-08752 (Tencent); *Felix*, No. 1:21-cv-10286 (IQIYI); *Florio*, No. 1:21-cv-08618 (Gaotu); *Ulanch*, No. 1:21-cv-08897 (ViacomCBS); *Scully*, No. 1:21-cv-10791 (Baidu); and *Lee*, No. 1:22-cv-0169 (Discovery). Each of these actions is referred to as an "Issuer Action."

outlining the work and various tasks to be performed at this stage of the litigation, *i.e.*, investigation, pleadings, and motion to dismiss (referred to as "Phase I"). It also requires counsel to contribute to the litigation on a provisional equal basis. As the litigation advances, the agreement will be amended to reflect the different phases of the case (*e.g.*, discovery, summary judgment/trial) and account for any conflicts that may arise.

While the Joint Prosecution Agreement requires coordination across the *Archegos Capital Management* actions, it also provides counsel in each Issuer Action with authority to control the litigation of their case. The Court properly recognized in its previous order that conflicts may emerge between the Issuer Actions. Dkt. No. 40 at 4. Thus, to protect the interests of the classes, counsel in each Issuer Action will retain the authority necessary to litigate their case in the best interests of their respective lead plaintiff and shareholder class. This safeguard is necessary to facilitate the efficiency and coordination intended by the Court insofar as it allows counsel to work together while, for example, avoiding internal disputes over damages strategies, class certification arguments, and loss causation issues.

Counsel in some of the other Issuer Actions support an approach adverse to this one. They suggest that an "executive" or "leadership" committee should be instituted whereby the committee has the ultimate authority to dictate how the Issuer Actions should be litigated, even if the attorneys on the committee do not represent shareholders belonging to a particular shareholder class. This structure would, in practice, allow the committee to adopt a course of action for the litigation that benefits one Issuer Action at the expense of another. The lead plaintiff and lead counsel for the disadvantaged Issuer Action would have no recourse under this structure and therefore be incapable of adequately protecting the interests of their class members.

While coordination and efficiency are desired by all parties involved in this action, whatever structure is adopted must allow the lead plaintiff and their selected counsel in each Issuer

Action to adequately protect the interests of the class they seek to represent. The Joint Prosecution Agreement proposed by Mr. Krueger and his counsel, Levi & Korsinsky, accomplish this goal. Accordingly, they respectfully request appointment in the *Tencent* action and the endorsement of the attached Joint Prosecution Agreement (in substantial form).

## II.    MICHAEL KRUEGER SHOULD BE APPOINTED TO LEAD THE *TENCENT* ACTION.

On December 27, 2021, Mr. Krueger moved for appointment as lead plaintiff and approval of selection of lead counsel in the *Tencent* action. Dkt. Nos. 19, 23, 24. In support of his motion, Mr. Krueger filed *inter alia* a chart detailing his transactions in Tencent Music Entertainment, showing that he purchased over 58,000 shares at a cost of over $1.1 million and sustained an approximate loss of $165,000 from Defendants' alleged fraud. Dkt. No. 24-2. Mr. Krueger also submitted a sworn declaration providing the Court with details concerning his personal and educational background, including that he resides in Richfield, Wisconsin, spent his career in the real estate industry, has been investing in securities for over 40 years, and has experience overseeing lawyers from an unrelated family law matter. Dkt. No. 24-2.

As the movant with the "largest financial interest" in the *Tencent* action and having demonstrated his typicality and adequacy to represent the class under Rule 23, he was (and remains) the "most adequate" plaintiff to serve as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Indeed, although there were four other movants to file similar motions for lead plaintiff, they each subsequently withdrew and/or filed notices of "non-opposition" to Mr. Krueger's motion thereby endorsing his "presumptive" status as the lead plaintiff. *See* Dkt. No. 36; *see also*, *e.g.*, *Kristal v. Mesoblast Ltd.*, No. 20-CV-08430 (PMH), 2020 U.S. Dist. LEXIS 241852, at *6 (S.D.N.Y. Dec. 23, 2020) (appointing lead plaintiff where competing movants "filed Notices of Non-Opposition or a Notice of Withdrawal in apparent recognition that a presumption exist[ed]").

3

Mr. Krueger remains the "most adequate" plaintiff to serve as the lead plaintiff. Over the course of his career in the real estate industry, Mr. Krueger oversaw hundreds of construction and renovation projects. He supervised four construction crews and coordinated the construction of various housing units across several different trades (*e.g.*, electricians, plumbers, tillers, carpentry). The oversight experience he gained from this line of work is transferrable to the task at hand. Coordinating between the various plaintiffs and lawyers in each of the *Archegos Capital Management* actions is, in many ways, similar to coordinating construction work between trades across several different projects. Mr. Krueger attests to his coordination skills in the accompanying declaration. *See* Supplemental Declaration of Michael Krueger at ¶¶3-4. On this basis, Mr. Krueger believes he is uniquely qualified to serve as the lead plaintiff in the *Tencent* action and coordinate the litigation with other lead plaintiffs across the various *Archegos Capital Management* actions.

## III.   THE COURT SHOULD APPROVE LEVI & KORSINSKY AS MR. KRUEGER'S CHOICE FOR LEAD COUNSEL IN THE *TENCENT* ACTION.

Mr. Krueger, if appointed as lead plaintiff, has the right to select his counsel under the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."); *see also Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168, at *23 (S.D.N.Y. Dec. 13, 2021) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001))); *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (same). In this instance, Mr. Krueger selected Levi & Korsinsky to represent him and the class in the *Tencent* action.

Mr. Krueger retained Levi & Korsinsky after researching the firm and speaking with its attorneys. Mr. Krueger continues to be in favor of Levi & Korsinsky's representation because,

among other reasons, the firm is nationally recognized in the area of securities litigation. It has represented shareholder classes in numerous state and federal court actions throughout the country and has repeatedly been approved to represent shareholder classes similar to the one at bar. *See*, *e.g.*, *White Pine Invs. v. CVR Ref., LP*, 2021 U.S. Dist. LEXIS 1199, at *9 (S.D.N.Y. Jan. 5, 2021) ("The Court is satisfied that the firm [Levi & Korsinsky] has 'extensive experience' in this area of law and is sufficiently qualified to conduct this litigation."); *Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) ("After reviewing the Shermans' submission detailing Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class.").

Levi & Korsinsky's experience in the world of securities litigation cannot be credibly disputed. Over the last four years, Levi & Korsinsky has been lead, or co-lead counsel in 35 separate settlements that have resulted in nearly $200 million in recoveries for shareholders. During that time, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. In Lex Machina's Securities Litigation Report, Levi & Korsinsky ranked as one of the Top 5 Securities Firm for the period from 2018 to 2020. In 2019 and 2021, Lawdragon Magazine ranked multiple members of Levi & Korsinsky among the 500 Leading Plaintiff Financial Lawyers in America. In the past decade alone, the firm has been appointed as lead counsel in approximately 100 securities class actions.[2]

Levi & Korsinsky is also committed to working cooperatively with the other parties involved in the litigation. The firm has consistently been in favor of coordinating the various cases. In advance of the conference on January 25, 2022, Levi & Korsinsky spoke with other potential

---

[2] The firm résumé submitted with Mr. Krueger's motion papers on December 27, 2021 provides additional information as to Levi & Korsinsky's experience. Dkt. No. 24-5.

lead counsel to discuss the possibility of coordinating the litigation and, at the very least, taking consistent positions with respect to the merits of the case. Following the conference, several of the plaintiffs' firms elected to take positions that, in effect, deprived the lead plaintiffs and their counsel of ultimate authority over the litigation of their cases. Notwithstanding, Levi & Korsinsky scheduled and/or participated in additional calls in attempt to reach a consensus on how the actions could best be coordinated, including calls on January 26, 2022 and March 14 and 21, 2022. Unfortunately, fundamental differences in opinions have prevented the various firms from reaching a uniform position. These differences in opinions include whether counsel can represent shareholders in more than on Issuer Action and/or have authority to control the litigation of more than one Issuer Action, given that "as-yet invisible points of factual and legal divergence, individualized discovery concerns, class certification complications, and even conflicts between the classes, may *eventually* emerge." Dkt. No. 40 at 4.

## IV.     THE JOINT PROSECUTION AGREEMENT PROPOSED BY MR. KRUEGER AND LEVI & KORSINSKY PROVIDES A FAIR AND EFFECTIVE STRUCTURE FOR A COORDINATED LITIGATION.

If approved, the JPA will ensure that counsel in each of the Issuer Actions works with one another to coordinate the prosecution of the *Archegos Capital Management* actions. The following points description contains the salient points of the JPA, but counsel respectfully requests that the Court review the entirety of the agreement.

Organization of Work. The JPA identifies the collective work that will be done during "Phase I" of the Litigation, which includes all work prior to the commencement of discovery. Phase I consists broadly of four categories: Liaison/Administrative Counsel; Investigation; Amended Pleading; and Motion to Dismiss. Within each category, the JPA identifies several key tasks and/or areas of work that will need to be completed for the benefit of the Litigation overall.

This work can be divided evenly between the counsel in the Issuer Actions because it will be necessary for the prosecution of the *Archegos Capital Management* actions generally. The JPA also provides for updates to the scope of work as the case progresses into Phases II and III, which generally relate to discovery and summary judgment/trial, respectively. The following paragraphs describe the work comprising Phase I of the Litigation:

1)    *Liaison/Administrative Counsel*. The JPA provides for a Liaison/Administrative counsel to facilitate the coordination between each of the Issuer Actions. In addition to serving as an initial point of contact for the other parties in the case, the Liaison/Administrative counsel will also keep track of internal deadlines and ensure that counsel are successfully carrying out their obligations under the JPA in terms of work and expense contributions. The Liaison/Administrative counsel will also be charged with overseeing the joint litigation fund, which is an additional feature of the JPA intended to streamline the retention and payment of outside vendors. Liaison/Administrative counsel will also be responsible for organizing internal working group calls and keeping track of the items discussed.

2)    *Investigation*. The *Archegos Capital Management* actions all arise from the same core set of facts, *i.e.*, the unwinding of Archegos Capital Management. The events leading up to the unwinding along with the illicit trading allegedly committed by Defendants will be featured in each of the Issuer Actions. Thus, counsel will be able to conduct a joint investigation into these facts and rely on the results of that investigation for their respective pleadings. The JPA provides for the division and/or delegation of the investigation to several different counsel by, for example, assigning the review of SEC filings and media reports to certain firms while others are responsible for overseeing outside investigators. The JPA also contemplates the review and analysis of the investigation results, which would then be shared with lead counsel in each of the Issuer Actions.

3)      *Amended Pleading*. While the JPA contemplates separate amended pleadings in each Issuer Action, it recognizes that some sections will be substantially similar and coordinates the drafting of these sections. For example, the parties, factual background, and counts are all likely to be substantially similar (if not identical), even though separate amended complaints will be filed in each Issuer Action. This allows counsel to avoid duplication of efforts while at the same time retaining the ability to assert allegations specific and/or unique in the Issuer Action for which they have been appointed as lead counsel, *e.g.*, class allegations, loss causation, damages. Liaison/Administrative counsel would assist in the coordination of the amended pleadings in each of the Issuer Actions by, among other thing, noting for discussion where the pleadings differ from one action to the next.

4)      *Motion to Dismiss*. The factual similarities between each Issuer Action will allow Defendants to file one omnibus motion to dismiss, notwithstanding the filing of separate amended complaints. Counsel in each of the Issuer Actions will likewise be able to coordinate the filing of one omnibus response to the motion. The JPA contemplates dividing work for the response among the various counsel with certain firms being responsible primarily for the legal research, drafting, cite checking, and formatting. To the extent any factual or legal issues is unique to one Issuer Action, Lead Counsel for that Issuer Action would be responsible for preparing an additional response or section.

Allocation of Contributions. The JPA provisionally requires counsel in each Issuer Action to contribute evenly in terms of work and expenses. In practice, this would begin immediately with a contribution of a fixed amount per each Issuer Action into a joint litigation fund (to be created and maintained by Liaison/Administrative counsel). Counsel would perform work as discussed above and circulate lodestar reports on a quarterly basis. These lodestar reports would be used to monitor the contributions of the various firms and either increase or decrease work to ensure that

all firms are properly meeting their obligations under the JPA. As the litigation progresses and additional information is discovered concerning the merits or damages of the various Issuer Actions, contribution levels would be adjusted to coincide with the values of the Issuer Actions relative to one another.

Independence of Issuer Actions. As the Court recognized, "as-yet invisible points of factual and legal divergence, individualized discovery concerns, class certification complications, and even conflicts between the classes, may *eventually* emerge." Dkt. No. 40 at 4. Thus, to protect the classes in each Issuer Action, the JPA provides counsel with the ability to take positions as necessary to protect the interests of any particular class. For example, counsel in one Issuer Action may adopt a position at class certification to protect the interests of his class, even though doing so may be detrimental to the interests of another class in a different Issuer Action. This particular point is essential to the successful coordination of the *Archegos Capital Management* actions because it eliminates the need for counsel to stake positions early in the litigation in an effort to steer it towards particular outcomes; without the threat of being bound to any one litigation strategy, counsel in the Issuer Actions can work together freely while knowing that they have the right to diverge from the coordination when necessary.

## V.    CONCLUSION

Mr. Krueger and Levi & Korsinsky should be appointed as lead plaintiff and lead counsel in the *Tencent* action. With the proposed Joint Prosecution Agreement in place, they will be able to successfully coordinate the litigation of the *Tencent* action with the other *Archegos Capital Management* actions.

//

//

//

9

Dated: March 30, 2022                    Respectfully Submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         By: */s/ Adam M. Apton*
                                         Adam M. Apton
                                         55 Broadway, 10th Floor
                                         New York, NY 10006
                                         Tel: (212) 363-7500
                                         Fax: (212) 363-7171
                                         Email: aapton@zlk.com

                                         *Counsel for Michael Krueger and*
                                         *[Proposed] Lead Counsel for the Tencent*
                                         *Music Entertainment Group Class*