**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MERSON, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>          Defendants. | Case No.: 1:21-cv-08752-PAC<br><br>Hon. Paul A. Crotty<br><br>**[PROPOSED] ORDER**<br><br>This Order relates to: |

THIS DOCUMENT RELATES TO:

> 1:21-cv-08413
> 1:21-cv-10286
> 1:21-cv-08618
> 1:21-cv-08897
> 1:21-cv-10791
> 1:22-cv-00169

Having considered the papers and pleadings submitted in the above-captioned and related actions and argument thereon, it is HEREBY ORDERED that:

1.      Michael Krueger's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Dkt. No. 19) is GRANTED;

2.      Pursuant to the Private Securities Litigation Reform Act of 1995, the Court is required to adopt a presumption in favor of the movant with the "largest financial interest" in the litigation that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii);

3.      Mr. Krueger purchased Tencent Music Entertainment Group securities during the putative class period, investing nearly $1.1 million and ultimately sustaining an alleged loss of

1

approximately $165,000. Relative to the other movants who filed motions for appointment as lead plaintiff, Mr. Krueger possesses the "largest financial interest" in the litigation;

4.      Mr. Krueger also demonstrated his typicality and adequacy under Rule 23 by, *inter alia*, providing information about his educational and professional background. In pertinent part, Mr. Krueger operated a successful home improvement business during the course of his career that required him to oversee and manage numerous construction crews and coordinate the completion of projects. Mr. Krueger's coordination skills are transferrable to the litigation at bar and further demonstrate his adequacy to serve as the lead plaintiff in this action.

5.      Having established that Mr. Krueger is entitled to a presumption of "most adequate plaintiff," the other movants must come forward with "proof" showing that he is unable to adequately protect the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). The other movants who filed motions for lead plaintiff have not done this; instead, in response to Mr. Krueger's initial motion for lead plaintiff, the other movants filed notices of non-opposition and/or withdrew their motions entirely. *See* Dkt. No. 36. Accordingly, the presumption of "most adequate plaintiff" stands and, for that reason, Mr. Krueger is hereby appointed as the lead plaintiff in the *Tencent* action.

6.      Mr. Krueger, as the lead plaintiff, is entitled to select counsel to represent the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). The Court hereby approves Mr. Krueger's selection of Levi & Korsinsky, LLP to serve as lead counsel in the *Tencent* action. Levi & Korsinsky has a demonstrated track record of a success in the field of securities litigation and has been routinely appointed as lead counsel in actions similar to the one at bar. Levi & Korsinsky, having demonstrated its expertise and qualifications to serve as counsel for the class in this action, is hereby appointed as lead counsel for the class in the *Tencent* action.

7.      Mr. Krueger and Levi & Korsinsky propose that this action and the other related matters are coordinated through the use of a Joint Prosecution Agreement (attached hereto as Exhibit A). The Court has reviewed the Joint Prosecution Agreement and approves it in substantial form because it effectively institutes a structure whereby the various firms serving as lead counsel in these related matters will work collectively to achieve a successful outcome. Among other things, the agreement defines the various aspects of the work that needs to be completed at this stage of the proceedings and provisionally provides for equal contribution among lead counsel across the various related cases. The Joint Prosecution Agreement also provides each lead counsel with the right and ability to protect the interests of their particular shareholder class by allowing each lead counsel to act independently if and when the circumstances require it. Accordingly, the Court hereby endorses the use of the Joint Prosecution Agreement in substantial form for the purpose of coordinating the litigation of the various related actions.

IT IS SO ORDERED.


Dated: _____                    _____
                                           PAUL A. CROTTY
                                           UNITED STATES DISTRICT JUDGE

## JOINT PROSECUTION AGREEMENT

The Firms (as defined below) enter into this Joint Prosecution Agreement ("JPA") to ensure that the following federal securities class action lawsuits are vigorously and efficiently prosecuted without duplication of work or delay:

- *Tan v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-08413;

- *Merson v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-08752;

- *Felix v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-10286;

- *Florio v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-08618;

- *Ulanch v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-08897;

- *Scully v. Goldman Sachs Group Inc., et ano.*, No. 1:21-cv-10791; and

- *Lee v. Goldman Sachs Group Inc., et ano.*, No. 1:22-cv-0169.

Each of the above lawsuits is an "Issuer Action" and, collectively, the "Issuer Actions" or the "Litigation" generally.

I.      Privilege and Confidentiality

The Firms agree that the terms of this JPA are confidential and shall not be disclosed to anyone not a party to this JPA. The Firms shall be bound by the joint privileges accorded under this agreement including the attorney-client and work-product privilege.

II.     Organization of Work

The Firms agree to assume joint responsibility for the Litigation. Each Firm will devote resources needed to assure the accomplishment of the purposes of this JPA. The JPA contemplates the work set forth in this section. As the case progresses, the Firms agree to update and amend the JPA to reflect the existing needs of the Litigation.

The following work represents Phase I of the Litigation which includes all work prior to the commencement of discovery (*e.g.*, investigation, pleadings, motions to dismiss). The Firms will share and/or divide the following work amongst each other in accordance with the terms of this JPA:

A.  Liaison/Administrative Counsel

a.  Scheduling – Communicating with defense counsel and lead counsel for case scheduling with the Court and internal deadlines

b.  Secretary/Agenda – Noting and setting agendas for bi-weekly internal lead counsel meetings

    c. Workflow Planning – Developing and overseeing internal workflow schedules

    d. Accounting Recordkeeping and Timekeeping – Overseeing litigation fund contributions and distributions; ensuring compliance with timekeeping procedures and lodestar reporting

    e. JPA Amendment – Revisions to the JPA as case progresses

B. Investigation

    a. Joint Litigation Fund – Contributions on behalf of each Issuer Action

    b. Investigator – Interview and selection of investigator; communication with investigator

    c. SEC Filings – Review and analysis of pertinent SEC filings

    d. Media/News Reports - Review and analysis of pertinent media and news reports

    e. Summarization – Analysis of investigation findings; summary reports

C. Amended Pleading

    a. Parties – Identification of parties and relevant non-parties

    b. Factual Background – Chronology of events preceding alleged violations

    c. Counts – Selection of counts/claims to assert

    d. Coordination – Comparison and analysis of the amended pleadings filed in each Issuer Action

D. Motion to Dismiss

    a. Research – Identification and analysis of common legal issues

    b. Drafting – Primary responsibility for initial draft

    c. Cite Checking – Legal authority and factual references

    d. Proofing – Grammar, syntax, spelling

    e. Finalization – Formatting, tables, compliance with individual practice rules

    f. Filing – CM/ECF compliance

The Firms agree to update and amend the JPA if and when the litigation progresses to Phases II and III, which generally correspond to discovery and summary judgment/trial, respectively.

III.    Allocation of Contributions

Work and expenses will be divided and/or incurred provisionally on an even basis by and between the Firms in each Issuer Action. Each Firm will make an initial contribution of $5,000 (for a total of $35,000) to a litigation fund to be setup and maintained by Liaison/Administrative Counsel. As the Litigation progresses, the Firms may adjust the contribution amounts to reflect the relative values of each Issuer Action so that each Firm contributes resources commensurate with the recovery in the Issuer Action it oversees.

IV.    Billing and Record-Keeping

Time shall be tracked contemporaneously and recorded in 1/10th hour increments using ABA litigation task and activity codes. Liaison/Administrative Counsel will collect lodestar reports quarterly and circulate them to the Firms. The Firms will rely on the quarterly lodestar reports to ensure that each Firm is performing (or receiving its opportunity to perform) its required share of the delegated work.

V.    Independence of Issuer Actions

Notwithstanding any provision herein to the contrary, the Firms agree that each Issuer Action may need to be litigated individually at various points in the Litigation. Accordingly, each Firm will retain the authority to act on behalf of the Issuer Action for which it has been appointed Lead Counsel.

VI.    Dispute Resolution

To the extent a Firm is not appropriately performing its obligations under this JPA, it will be given an opportunity to remedy the issue if feasible under the circumstances. If the Firm cannot adequately remedy the issue, then it will be permitted to decrease its pro rata contribution of the expenses and/or work provided the other Firms agree to increase their respective contributions accordingly. If the Firm continues to inadequately perform its obligations under this JPA, it may be substituted as Lead Counsel in its Issuer Action with approval from the Court.

The terms of this JPA shall be interpreted in accordance with, governed by, and enforced in all respects under the laws of the State of New York.  Any dispute arising under this JPA will be submitted to binding arbitration in New York, New York.  Each firm will bear its own fees and costs of the arbitration regardless of the outcome.

*          *          *

This JPA is effective as of _____ and agreed to by and between the below firms representing the court-appointed Lead or Co-Lead Counsel in each of the Issuer Actions ("Firms," each of which is a "Firm" as referred to above).

[Signatures on following page]

Page 3 of 4

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the Vipshop Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the Vipshop Holdings Ltd. Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the Tencent Music Entertainment Group Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the iQIYI, Inc. Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the GSX Techedu Inc. Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the ViacomCBS Issuer Action*

Dated: _____          By: _____

                                          [Lawyer]
                                          [Firm]

*Plaintiffs in the Discovery Issuer Action*