# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEW KING TAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>                    Defendants.<br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>        1:21-cv-08618-PAC<br>        1:21-cv-08752-PAC<br>        1:21-cv-08897-PAC<br>        1:21-cv-10286-PAC<br>        1:21-cv-10791-PAC<br>        1:22-cv-00169-PAC | Case No. 1:21-cv-08413-PAC |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS GROUP'S MOTION FOR APPOINTMENT OF VARIOUS LEAD PLAINTIFFS AND LEAD COUNSEL, AND APPOINTMENT OF A PLAINTIFFS' EXECUTIVE COMMITTEE <u>AND CO-CHAIRS OF THE EXECUTIVE COMMITTEE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

 I.  SUMMARY OF CLAIMS .............................................................3

 II.  PROCEDURAL HISTORY .........................................................7

 III.  THE PROPOSED STRUCTURE FOR THE CASE ................................9

ARGUMENT .............................................................................................................9

 I.  PSLRA APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL ....10

   A.  Lead Plaintiff and Lead Counsel Appointment Criteria ...........................10

   B.  Vipshop – Movant Shapovalov and His Chosen Counsel, Johnson Fistel LLP, Should Be Appointed to Lead the Vipshop Class .................12

   C.  Gaotu – Movant Zaheer and His Chosen Counsel, Berger Montague LLP, Should Be Appointed to Lead the Gaotu Class ...............................12

   D.  Tencent – Zhenming and His Chosen Counsel, Pomerantz LLP, Should Be Appointed to Lead the Tencent Class ....................................13

   E.  ViacomCBS – Urman and the Kellner Newcomer Partnership, and Their Chosen Counsel, Pomerantz, Should Be Appointed to Lead the ViacomCBS Class .................................................................................16

   F.  iQIYI – Jiang and His Chosen Counsel, Scott+Scott, Should Be Appointed to Lead the iQIYI Class ........................................................18

   G.  Baidu – Watchel and His Chosen Counsel, Hedin Hall, Should Lead the Baidu Class ........................................................................................18

   H.  Discovery – The Oklahoma Funds and Jamal Pesaran, and Their Chosen Counsel, Scott+Scott and Grant & Eisenhofer, Should Be Appointed to Lead the Discovery Class ........................................................................18

 II.  A FORMAL LEADERSHIP STRUCTURE IS NECESSARY TO EFFECTIVELY LITIGATE THE ARCHEGOS CASES ....................................20

   A.  Formal Structure Needed ........................................................................21

   B.  Scott+Scott and Hedin Hall Are Best Suited to Co-Chair the Executive Committee and Direct the Archegos Cases ...............................................22

CONCLUSION .........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
   No. 06 Civ. 13761(CM), 2007 WL 9228588 (S.D.N.Y. July 31, 2007) ................................ 11

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   No. 20-CV-2031 (JSR), 2020 WL 2614703 (S.D.N.Y. May 22, 2020) ................................ 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................................................ 10

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. CIV A 07-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................. 11

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ............................. 11

*Reimer v. Ambac Fin. Grp., Inc.*,
   No. 08 CIV. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................... 11

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................................... 12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 11

**Statutes, Rules, and Regulations**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(I) .......................................................................................................... 10
   §78u-4(a)(3)(B)(iii)(II)(aa) .................................................................................................. 12
   §78u-4(a)(3)(B)(v) ................................................................................................................ 12

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................................ 10, 12

## INTRODUCTION

The Plaintiffs Group[1] respectfully files this memorandum of law in support of their joint

motion for appointment of lead plaintiffs and lead counsel in the seven above-captioned

coordinated securities class actions against Goldman Sachs Group Inc. ("Goldman Sachs") and

Morgan Stanley (the "Archegos Cases").  In its Order dated March 9, 2022 (the "Coordination

Order"), this Court correctly found that the Archegos Cases are "all-but-identical cases" that must

be "closely coordinated."  Coordination Order at 5.  Accordingly, the Court directed movants to

re-file motions and:

    (i)     Address which movants are "best positioned not only to lead their own class, but also to cooperate productively and efficiently with the other class leads";

    (ii)    "[D]etail a proposed leadership structure that will protect against the duplicative and inefficient individualized litigation of matters common across all of the actions"; and

    (iii)    "[S]ubmit . . . proposed orders detailing the precise contours of coordination."

*Id.* at 6-7.

After extensive good faith negotiation and discussion, a broad consensus among plaintiffs

has emerged regarding these matters.  The Plaintiffs Group represents that consensus, comprising

the vast majority of plaintiffs and movants across all cases, including the presumptive lead

plaintiffs in six of the seven Archegos Cases as well as the movant with the second largest loss in

the remaining Case.  On behalf of that broad consensus, the Plaintiffs Group hereby proposes a

---

[1]     The Plaintiffs Group is made up of the following plaintiffs and lead plaintiff movants:  the Kellner Newcomer Partnership (the "Partnership"), Oklahoma Firefighters Pension and Retirement System ("OFP"), Oklahoma Law Enforcement Retirement System ("OLERS"), Yan Cai Jiang ("Jiang"), Dr. Jeffrey Wachtel ("Wachtel"), Jamal Pesaran ("Pesaran"), Zhang Zhenming ("Zhenming"), Felix Urman ("Urman"), Syed Zaheer ("Zaheer"), Alexander Shapovalov ("Shapovalov"), Chew King Tan, Travis Florio, Michael Merson, Mark Ulanch, Igor Li, Kai Chen, Alma Felix, Alison Scully, Su Yan, Kevin Lee, J. and S. Patel Trust U/A dated 8/4/2015, Lei Bian, Tong B. Tran, Kuan Iok Ieong, Sajed Hanif, Gregory Dee, and Po-Hsun Huang.

streamlined structure consisting of a seven-member executive committee co-chaired by two firms – Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Hedin Hall LLP ("Hedin Hall") – collectively responsible for overseeing the coordinated litigation of the Archegos Cases, including: (a) drafting a coordinated amended complaint; (b) omnibus briefing on threshold motions, including Plaintiffs' anticipated motion to lift the discovery stay currently in effect pursuant to the Private Securities Litigation Act of 1995 ("PSLRA") and Defendants' anticipated omnibus motion to dismiss the coordinated amended complaint; (c) coordinated private investigative efforts as well as outreach to the array of governmental actors conducting investigations into the underlying alleged misconduct; and (d) coordinated fact and expert discovery.  As even this partial summary of immediate tasks demonstrates, there is urgent work to be done and further delay risks leaving all the Archegos Cases at a disadvantage, playing catch-up to ongoing regulatory investigations and at risk of prejudice from quick insider settlements among Archegos Capital Management and its prime brokers.  The proposed structure is designed to get the Archegos Cases moving forward now, in an efficient manner and with a unified voice, while preserving flexibility should "as-yet invisible" conflicts somehow surface in the future.  *See* Coordination Order at 4.

With respect to the leadership of the individual issuer cases, the Plaintiffs Group makes the uncontroversial proposal that the unopposed presumptive leads in six of the seven cases be appointed lead plaintiff (Vipshop, Gaotu, ViacomCBS, iQIYI, Baidu, and Discovery).  Each of these movants and their chosen counsel have demonstrated the cooperativeness, civility, expertise, and good sense necessary "not only to lead their own class, but also to cooperate productively and efficiently with the other class leads."  *See* Coordination Order at 5.  Unfortunately, one holdout in a single case (Tencent) ultimately rebuffed every good faith effort toward cooperation and consensus.  For that one case, the Plaintiffs Group proposes the movant with the second largest

loss be appointed lead because the presumptive lead has proven himself to be inadequate by repeatedly refusing to work with the other plaintiffs to efficiently litigate this case.

Further, in order to prosecute these cases efficiently and not waste resources and any potential class-wide relief that might be obtained, the Court should appoint an Executive Committee with Co-Chairs. The Plaintiffs Group has submitted a detailed and reasonable proposal to that end. *See* Laughlin Decl., Ex. 1.

Accordingly, the Court should grant the Plaintiffs Group's motion in full.

## BACKGROUND

### I.   SUMMARY OF CLAIMS

Each of the Archegos Cases arises out of the same alleged insider trading by Defendants Morgan Stanley and Goldman Sachs ahead of the March 2021 collapse of Archegos Capital Management ("Archegos"). Defendants served as prime brokers for Archegos, servicing its trades and lending capital through margin accounts, and thereby enabling Archegos to acquire large, non-public positions in each of the seven issuers that are the subject of the Archegos Cases. *See*, *e.g.*, ¶¶12-13.[2]

Archegos's undisclosed stake across these issuers was massive and highly leveraged. By early January 2021, after repeated breaches of exposure limits, the ballooning risk posed by Archegos's positions led Morgan Stanley, Goldman Sachs, and other of its prime brokers to issue a series of escalating margin calls, demanding hundreds of millions of dollars in additional collateral from Archegos. By the week of March 22, 2021, Archegos's ability to cover was all but exhausted when further declines across several of its significant long positions exacerbated its

---

[2]     Citations to paragraphs ("¶") are to paragraphs in the complaint filed in the first of the Archegos Cases, captioned *Tan v. Goldman Sachs*, Case No. 1:21-cv-08413, Dkt. No. 1 (the "Complaint").

exposure, leading Morgan Stanley, Goldman Sachs, and its other prime brokers to demand billions of dollars in additional collateral.  Because it was already tapped out, Archegos informed its prime brokers that it did not have the liquidity to meet any of their margin calls.  *See*, *e.g.*, ¶32.  And while committing to "liquidating assets to cover the shortfall," Archegos also warned its prime brokers that it would need to "carefully liquidate positions in order to not tip the market."[3]

Archegos thus convened a series of calls with its prime brokers, including Morgan Stanley and Goldman Sachs, informing them that while its equity had declined to less than $10 billion, its gross exposure had ballooned to $120 billion, and proposing that its prime brokers enter into a collective standstill, forbearance, or managed liquidation agreement.[4]  The prime brokers also held a series of calls discussing the possibility of a managed liquidation without Archegos, whereby the prime brokers would send their positions for review to an independent counsel, government regulator, or other independent third party, who would freeze holdings for the entire consortium when the aggregate concentration reached particular levels, and give the lenders a percentage range within which they would be permitted to liquidate their overlapping positions.[5]  Counsel for all the banks were engaged and attended these calls to work through regulatory and legal challenges, and legal counsel for Morgan Stanley, Goldman Sachs, and the other prime brokers further held calls among themselves, acknowledging confidentiality and that, among other things, no prime broker was permitted to disclose Archegos-related positions.

---

[3]     *Archegos: learning lessons from the past*, SECURITIES FINANCE TIMES (Oct. 16, 2021), https://www.securities financetimes.com/editorspicks/editorspicks.php?editors_picks_id=202&navigationaction=editorspicks&newssection =editorspicks.

[4]     *Id.*

[5]     *Id.*

But at the same time Archegos and its prime brokers were engaged in this ostensibly good faith, private negotiation toward an orderly liquidation, two of its largest prime brokers – Defendants Morgan Stanley and Goldman Sachs - were in truth already tipping off their hedge fund clients and unloading billions of dollars in block trades and other transactions across the very same underlying issuers jeopardized by Archegos's imminent collapse.  *See*, *e.g.*, ¶32.  For example, as was later reported in an article published by *CNBC.com* on April 6, 2021, "before the Archegos story burst into public view . . . the fund's biggest prime broker quietly unloaded some of its risky positions . . . . Morgan Stanley sold about $5 billion in shares from Archegos's doomed bets . . . late Thursday, March 25."  *Id.*  These illicit insider sales allowed Morgan Stanley and Goldman Sachs (and its preferred hedge fund clientele) to avoid billions in losses on the basis of material nonpublic information related to Archegos's impending liquidation, but the ensuing fallout caused severe harm to ordinary investors.  *Id.*  By March 27, 2021, when it was publicly reported that Archegos had failed to cover, Archegos had liquidated over $20 billion of its leveraged equity positions.  *See*, *e.g.*, ¶29.

But the fallout did not end there.  Over the months since, a firehose of public reports have revealed an array of government and regulatory civil and criminal investigations that have been opened, expanded, or accelerated, specifically targeting the block trading and other Archegos-related activity of Morgan Stanley and Goldman Sachs.[6]  Public reports have named particular

---

[6]    *Morgan Stanley's role in Archegos collapse sped up block trade probes – Bloomberg News*, REUTERS (Feb. 16, 2022), https://www.reuters.com/business/finance/morgan-stanleys-role-archegos-collapse-sped-up-block-trade-probes-bloomberg-news-2022-02-16; *The S.E.C. has issued a subpoena to Archegos, the $10 billion firm that collapsed spectacularly*, N.Y. TIMES (Oct. 8, 2021), https://www.nytimes.com/2021/ 10/08/business/archegos-sec-subpoena.html; *At Hearing, Warren Calls On The Biden Administration to Replace Quarles As Soon As His Term Is Up* (May 25, 2021), https://www.warren.senate.gov/ newsroom/press-releases/at-hearing-warren-calls-on-the-biden-administration-to-replace-quarles-as-soon-as-his-term-is-up; *Archegos Cited in U.S. Watchdogs' Warning About Hedge Fund Risks,* BLOOMBERG NEWS (Feb. 4, 2022), https://news.bloomberglaw.com/banking-law/top-u-s-watchdogs-point-to-archegos-in-hedge-fund-risk-study; *SR 21-19: The Federal Reserve Reminds Firms of Safe and Sound Practices for Counterparty Credit Risk Management in Light of the Archegos Capital Management Default,*

Morgan Stanley and Goldman Sachs employees and hedge fund clients implicated in the underlying misconduct alleged in these cases, including Pawan Passi, the long-time head of Morgan Stanley's block trading business, who was placed on leave in November 2021 amid regulatory investigations into his possible tipping of Morgan Stanley hedge fund clients - such as Surveyor Capital, Element Capital Management, CaaS Capital Management, Islet Management - ahead of Archegos-related block trades.[7] Other bankers swept up in these investigations include Michael Daum of Goldman Sachs, Michael Lewis, formerly of Morgan Stanley, and Felipe Portillo of Credit Suisse (another Archegos prime broker).

Over the past week, reports surfaced that Pawan Passi had been formally replaced at Morgan Stanley and may be cooperating with government investigators, and that Morgan Stanley is pursuing quick settlements with Archegos in an effort to keep, as-of-yet non-public facts out of reach from the DOJ and other government and private investigators and litigants.[8]  All of this underscores the need to get these cases moving in an organized fashion without further delay.

---

Board of Governors of the Federal Reserve System (Dec. 10, 2021), https://www.federalreserve.gov/supervisionreg/srletters/SR2119.htm.

[7]      *See, e.g.*, *Morgan Stanley Relationships on Wall Street Snared in Probe*, BLOOMBERG (Feb. 18, 2022), https://www.bloomberg.com/news/articles/2022-02-18/morgan-stanley-relationships-across-wall-street-snared-in-probe?utm_source=google&utm_medium=bd&cmpId=google; *Morgan Stanley hedge fund clients pulled into block trading probe – Bloomberg*, SEEKINGALPHA (Feb. 18, 2022), https://seekingalpha.com/news/3801883-morgan-stanley-hedge-fund-clients-pulled-into-block-trading-probe-bloomberg; *Morgan Stanley Finally Acknowledges DoJ "Block Trading" Probe*, ZeroHedge (Feb. 22, 2022), https://www.zerohedge.com/markets/morgan-stanley-finally-acknowledges-doj-block-trading-probe; *Senior Morgan Stanley Banker Reportedly Key Player in "Block Trading" Probe*, ZeroHedge (Feb. 16, 2022) https://www.zerohedge.com/markets/senior-morgan-stanley-banker-reportedly-key-player-block-trading-probe; *'The Morgan Stanley Fade': U.S. Probe Dredges Up Years of Animus*, BLOOMBERG NEWS (Mar. 27, 2022), https://www.advisorhub.com/the-morgan-stanley-fade-u-s-probe-dredges-up-years-of-animus/; *Recordings of Morgan Stanley's Passi Examined in Trading Probe*, BLOOMBERG NEWS (Feb. 16, 2022), https://www.bnnbloomberg.ca/recordings-of-morgan-stanley-s-passi-examined-in-trading-probe-1.1724617.

[8]      *See, e.g.*, *Archegos in settlement talks with banks*, FINANCIAL TIMES (Mar. 1, 2022), https://www.reuters.com/article/archegos-settlement-idCNL4N2V436T; *Banks Seem Willing to Accept No Money in Exchange For Pretending Archegos Doesn't Exist, Never Happened*, DEALBREAKER (Mar. 1, 2022), https://dealbreaker.com/2022/03/archegos-settlement-talks; *Credit Suisse Seeks Settlement with Archegos*, FINEWS.COM (Mar. 1, 2022), https://www.finews.com/news/english-news/50318-credit-suisse-in-negotiations-with-archegos.

## II.    PROCEDURAL HISTORY

After months of extensive factual and legal investigations, attorneys with Hedin Hall and Scott+Scott originated, developed, and then commenced the first of the Archegos Cases on October 12, 2021, asserting federal securities fraud claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934.  Over the next weeks and months, Hedin Hall and Scott+Scott initiated each of the other six Archegos Cases.  Once the first PSLRA Lead Plaintiff deadlines in the first few Archegos Cases passed, Hedin Hall and Scott+Scott engaged counsel both for Defendants and each of the other movants across all of the Archegos Cases, raising among other things the likely need for some measure of coordination across each of the nearly identical cases.  Pomerantz in the Viacom case and Johnson Fistel in the Vipshop cases, as well as The Schall Law Firm ("Schall Law"), each quickly recognized the need for cooperation across these complex cases and began engaging with Hedin Hall and Scott+Scott, as well as other movants, in good faith initial discussions regarding coordination.[9]

Then, on January 5, 2022, while several PSLRA deadlines remained outstanding, the Court ordered all parties to appear for a Status Conference.  Ahead of the conference, Hedin Hall, Scott+Scott, Pomerantz, and Johnson Fistel continued their ongoing discussions toward possible coordination across cases, continued to seek input from all movants' counsel, and continued to communicate with Defendants to reach an organized consensus to present to the Court.  During the Status Conference on January 25, 2022, after Thomas Laughlin of Scott+Scott presented the plaintiffs' then consensus position in favor of coordination, the Court indicated that the Archegos Cases rather appeared "tailor-made" for consolidation, queried how the PSLRA Lead Plaintiff

---

[9]      The facts regarding Scott+Scott and Hedin Hall's development of the Archegos Cases as well as the genesis and path of the instant Motion and proposed plan for coordination are set forth in an annexed sworn declaration by David Hall of Hedin Hall and Thomas Laughlin of Scott+Scott.  Laughlin Decl., Ex. 2.

appointment process would apply to such a consolidated action, and then ordered the parties to submit briefing "on the issues of consolidation as opposed to coordination."

Over the ensuing days, Scott+Scott, Hedin Hall, Pomerantz, and Johnson Fistel continued to engage both Defendants and all other plaintiffs and movants in extensive meet-and-confer discussions to identify and address any concerns that might genuinely counsel against consolidation. Nothing concrete or credible surfaced. Accordingly, in January, Scott+Scott, Hedin Hall, Pomerantz and Johnson Fistel filed a joint letter submitting that the cases should be consolidated. By contrast, Defendants and the two other lead plaintiff movants filed separate letters contending that the cases should be coordinated and briefed in tandem, but not consolidated. But even while all parties could not agree on the best case-management path forward, all could attest to the undersigned's extensive efforts to engage all sides in a good faith discussion of the issues.

All the undersigned have taken the Court's further guidance in the Coordination Order to heart, endeavoring over the past weeks to thoroughly consider and discuss each of the concerns flagged by the Court, to develop a straightforward leadership structure. As a result, further consensus has been reached. Two institutional plaintiffs who moved for the lead in the Discovery case on March 7, 2022 – OFP and Oklahoma Law Enforcement Retirement System ("OLERS") (together, the "Oklahoma Funds") – and their counsel, Grant & Eisenhofer, reached agreement regarding the structure of the case as did the presumptive lead in the Gaotu Case and his counsel. The latter is notable because the presumptive lead in Gaotu did not join the initial consolidation proposal made by Scott+Scott and Hedin Hall. At this point, all but one outlier movant, Michael Krueger, have agreed to the proposed structure.

### III.     THE PROPOSED STRUCTURE FOR THE CASES

The Plaintiffs Group comprises the vast majority of the firms still involved in these cases and has working diligently to build consensus on a leadership plan structured to achieve efficiencies to benefit all the Classes.  As set forth in detail in **Exhibit 1**, the Plaintiffs Group proposes an Executive Committee co-chaired by Scott+Scott and Hedin Hall.  The purpose of the Committee and the Chairs is to ensure that attorney and judicial resources are not wasted litigating these cases, which all parties and this Court agree are "all but identical."  Rather, the aim is to achieve the best resolution for all Classes, which necessarily includes limiting the time and expenses spent by plaintiffs' counsel – and which is not likely to occur without a formal leadership structure.

Annexed as **Exhibit 1** is a detailed summary of the roles of the members of the Executive Committee and the Co-Chairs or "Coordinating Counsel."  The Executive Committee has seven members.  Each member of the Committee is responsible for specific litigation tasks including briefing, and offensive, defensive, and expert discovery.  These assignments are designed to limit attorney work overlap.  Scott+Scott and Hedin Hall will co-chair the Executive Committee as Coordinating Counsel.  As described in detail herein, Scott+Scott and Hedin Hall have worked together since the inception of these cases – developing the factual record (which is ongoing); drafting and filing the first-filed complaints; and cultivating the consensus that has made this plan and joint filing possible.

The Plaintiffs Group has further agreed on a coordinated, efficient approach to pretrial proceedings, as set forth in their proposed order, annexed as **Exhibit 4**.  Among other things, the Plaintiffs Group proposes to:  (i) file an omnibus complaint sixty (60) days from approval of their structure; (ii) engage in omnibus motion to dismiss briefing; and (iii) engage in coordinated discovery that prevents duplicative document or deposition requests and limits costs.

## **ARGUMENT**

## I.    **PSLRA APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL**

Pursuant to the Court's Coordination Order, the Plaintiffs Group proposes appointment of the following lead plaintiffs and lead counsel for each of the issuer classes:

| Case | Lead Plaintiff(s) | Lead Counsel |
|------|-------------------|--------------|
| Gaotu | Syed Zaheer | Berger Montague and Rosca & Scarlato |
| Tencent | Zhang Zhenming | Pomerantz |
| Viacom | Felix Urman and Newcomer Partnership | Pomerantz |
| Baidu | Dr. Jeffrey Wachtel | Hedin Hall |
| Vipshop | Alexander Shapovalov | Johnson Fistel |
| IQIYI | Yan Cai Jiang | Scott+Scott |
| Discovery | Oklahoma Fire, Oklahoma Police and Jamal Pesaran | Grant & Eisenhofer and Scott+Scott |

In six of the seven cases (Viacom, Baidu, Vipshop, IQIYI, Gaotu, and Discovery), leadership is uncontested among the original movants and the proposed lead plaintiff or plaintiffs have the largest loss(es) asserted by any of the original movants.  In the remaining one case, Tencent, the movant with the largest loss is not adequate and therefore should not be appointed.

### A.    **Lead Plaintiff and Lead Counsel Appointment Criteria**

The PSLRA presumes that the most adequate plaintiff is the movant (or movants) with the largest financial interest in the case, but only if that candidate satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  A court's inquiry of whether a movant is adequate hinges upon his "willingness and ability to select competent class counsel."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001); *see also City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, No. 20-CV-2031 (JSR), 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (a movant's "manner of execution of one of the most important functions of lead plaintiff, the selection and retention of counsel, gives the Court reason to question his adequacy").  If the movant "selects lead counsel plainly incapable of undertaking the

representation, the Court can conclude that he has failed to surmount the threshold adequacy inquiry."[10]  *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177, 2007 WL 2683636, at *7 (D.N.J. Sept. 7, 2007).  In addition, to be adequate, movants themselves generally must be able to "cooperate" and provide a "plan for cooperation," where appropriate.  *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (movants should "evince[ ] an ability (and a desire) to work collectively to manage the litigation").

This Court has made clear that, in these Archegos Cases, a key element to competent and effective representation is the ability and willingness to work with the other lead plaintiffs and lead counsel to achieve the best results for the coordinated classes.  Coordination Order at ¶¶5-6 (lead plaintiff movants should "address . . . why the movant is best positioned not only to lead their own class, but also ***to cooperate productively and efficiently with the other class leads***"; "detail a proposed leadership structure that will protect against the duplicative and inefficient individualized litigation of matters common across all of the actions"; "address not just competence and expertise [of the firm chosen to be appointed as Lead Counsel], but also cooperativeness, civility, and a proposed leadership structure that will protect against duplicativeness, inefficiency, and in-fighting.").  Courts regularly reject presumptive leads that do not satisfy the "competent counsel" prong of the adequacy test.  *See, e.g., Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (rejecting presumptive lead plaintiff where "certain carelessness about detail" undermined its adequacy and rejecting counsel because it had made what appeared to be inflated statements about the firm's prior experience); *Plaut v. Goldman Sachs*

---

[10]      Unless otherwise noted, citations are omitted and emphasis is added.

*Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (finding applicant lacked adequacy in light of inadvertent clerical errors).

The PSLRA vests authority in the appointed lead plaintiff to select and retain lead counsel "subject to the approval of the court." *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The Court can overrule the choice of counsel if necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  It is not uncommon for courts to appoint multiple firms as Co-Lead Counsel in PSLRA cases, "'provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses.'"  *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004).

### B. Vipshop – Shapovalov and His Chosen Counsel, Johnson Fistel LLP, Should Be Appointed to Lead the Vipshop Class

Alexander Shapovalov should be appointed Lead Plaintiff for the Vipshop Class because he alleges the largest loss in that issuer of any competing movant — namely, $63,829 — and because he has made a *prima facie* showing that he satisfies Rule 23's requirements under the PSLRA.  *See* Dkt. Nos. 15, 16.  That showing has not been rebutted.  Shapovalov has demonstrated that he and his chosen counsel are positioned to cooperate productively and efficiently with the other class leads.  He has joined in the instant Motion with, and endorsed the proposed leadership structure put forth by, seven of the eight other firms still involved in the Archegos Cases.  Moreover, each of the competing movants that filed timely lead plaintiff motions in the Vipshop action either withdrew their motion or filed a notice of non-opposition to Shapovalov's motion.  *See* Dkt. Nos. 30, 33 in 21-cv-08413.[11]   Shapovalov's chosen counsel, Johnson Fistel, LLP

---

[11]    Kuan Iok Ieong ("Ieong") filed an opposition to Shapovalov's motion for appointment as lead plaintiff.  In light of the Court's Coordination Order and the efforts of the Archegos Invetors Group to work together, Ieong withdraws his opposition.

("Johnson Fistel"), should be appointed Lead Counsel.  Johnson Fistel has extensive experience and a track record of success in similarly complex shareholder litigation.  *Laughlin Decl.*, Ex. 8. Additionally, Johnson Fistel has previously worked collaboratively with other counsel in this matter.  *Id.*

C.   **Gaotu – Zaheer and His Chosen Counsel, Berger Montague LLP and Rosca & Scarlato LLC, Should Be Appointed to Lead the Gaotu Class**

Sayed Zaheer should be appointed Lead Plaintiff for the Gaotu Class because he alleges the largest loss in that issuer of any competing movant — namely, $116,541 — and because he has made a *prima facie* showing that he satisfies Rule 23's requirements under the PSLRA.  *See* Dkt. No. 22 in 21-cv-08618.  That showing has not been rebutted.  Zaheer has demonstrated that he and his chosen counsel are positioned to cooperate productively and efficiently with the other class leads.  He has joined in the instant Motion with, and endorsed the proposed leadership structure put forth by, seven of the eight other firms still involved in the Archegos Cases. Moreover, each of the competing movants that filed timely lead plaintiff motions in the Gaotu action either withdrew their motion or filed a notice of non-opposition to Zaheer's motion.  *See id.*, Dkt. Nos. 28-29.[12]

Zaheer's chosen counsel, Berger Montague LLP ("Berger Montague") and Rosca & Scarlato LLC ("Rosca & Scarlato"), should be appointed Co-Lead Counsel for the Gaotu Class. Berger Montague and Rosca & Scarlato have extensive experience and track records of success in similarly complex shareholder litigation.  *See* Laughlin Decl., Exs. 9 & 12.  Additionally, both firms recognized the need for and benefits of collaborating with the other firms involved in this

---

[12]   Sayed Hanif ("Hanif") filed an opposition to Zaheer's motion for appointment as lead plaintiff.  In light of the Court's Coordination Order and the efforts of the Plaintiffs Group to work together, Hanif hereby withdraws his opposition.

case and have demonstrated their ability and willingness to cooperate with all counsel in the Archegos Cases in a civil manner.

### D. Tencent – Zhenming and His Chosen Counsel, Pomerantz LLP, Should Be Appointed to Lead the Tencent Class

Zhang Zhenming  should be appointed Lead Plaintiff for the Tencent Class because he alleges the largest loss in that issuer of any competing movant who is also adequate — namely, $82,089.  Zhenming has made a *prima facie* showing that he satisfies Rule 23's requirements under the PSLRA.  *See* Dkt. No. 27 in 21-cv-08752.  That showing has not been rebutted.  Zhenming has demonstrated that he and his chosen counsel are positioned to cooperate productively and efficiently with the other class leads.  He has joined in the instant Motion with, and endorsed the proposed leadership structure put forth by, seven of the eight other firms still involved in the Archegos Cases.  Moreover, each of the competing movants that filed timely lead plaintiff motions in the Tencent action either withdrew their motion or filed notices of non-opposition.  *See* Dkt. Nos. 32-33, 35-36 in 21-cv-08752.[13]  Zhenming's chosen counsel, Pomerantz LLP ("Pomerantz"), is experienced and should be appointed Lead Counsel for the Tencent Class.  Laughlin Decl., Ex. 7.

There was one movant in the original round of motions that presented a larger financial interest than Zhenming — Michael Krueger ("Krueger").  But Krueger is not adequate to lead the Tencent actions.  Krueger's chosen counsel, Levi & Korsinsky LLP ("Levi & Korsinky") has demonstrated that it is not competent to act as lead counsel because it has refused to cooperate with the other firms involved in the Archegos Cases.  Krueger is either unaware of this or supports Levi & Korsinsky's unwise and unsupported efforts to separate the Tencent cases from the other

---

[13]     Zhenming originally filed a notice of non-opposition.  Dkt No. 34 in 21-cv-08752.  However, in light of the Court's Coordination Order and the efforts of the Plaintiffs Group to work together, Zhenming hereby withdraws his notice of non-opposition.

Cases.  Levi & Korsinky's efforts threaten the success of all the Archegos Cases and therefore both Kreuger and Levi & Korsinky are inappropriate to lead the Tencent cases.

Federal courts undertaking PSLRA lead plaintiff appointments regularly consider the ability of a lead plaintiff movant and its chosen counsel to lead a case in the best interest of putative class members when assessing adequacy.  *See Cendant*, 264 F.3d at 265; *City of Warren*, 2020 WL 2614703, at *3.  For example, courts have rejected movants on the ground that they cannot provide cohesive leadership to a case or where a movant's chosen counsel has demonstrated incompetence or an inability to effectively litigate an action.  *E.g.*, *Micholle v. Ophthotech Corp.,* 17-cv-210, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (date and price errors in submissions "militate against appointment and render [movant] inadequate to serve as lead plaintiff"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (rejecting movant with largest loss where errors in loss charts cast doubt that applicant possessed "the necessary adequacy and sophistication to be lead plaintiff"); *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 (S.D.N.Y. Dec. 5, 2019) (same).

Here, Krueger has proven himself and his counsel to be inadequate because this Court specifically directed the parties to consider and propose ways in which to organize these all but identical cases in order to best serve the class.  Krueger and his counsel have been unable to comply with the Court's directive.  Krueger and his counsel have been unable to agree to any proposed structure and appear unwilling to prosecute these actions in a coordinated manner.  Krueger's resistance to cooperation (or his counsel's resistance without advising him of such) threatens to harm not only the Tencent class but the other issuer classes.  This calls into question Krueger's ability to supervise and direct his counsel, and his ability to act for the Class.  Krueger is therefore not the most adequate plaintiff to lead the Tencent actions.

E.    **ViacomCBS – Urman and the Kellner Newcomer Family Partnership, and Their Chosen Counsel, Pomerantz, Should Be Appointed to Lead the ViacomCBS Class**

Felix Urman and The Kellner Newcomer Family Partnership should be appointed Co-Lead Plaintiffs for the ViacomCBS Class.  Urman and the Partnership alleged the largest and second largest losses in ViacomCBS of any competing movants — $5.03 million and $747,904, respectively (*see* Dkt. Nos. 26, 34-3 in 21-cv-08897), and each made a *prima facie* showing that they satisfy Rule 23's requirements under the PSLRA (*see id.*, Dkt. Nos. 26, 33).  All other movants withdrew their motion or filed a notice of non-opposition.  *See, id.*, Dkt Nos. 35-37. Urman and the Partnership decided to work together in the best interests of the ViacomCBS class by seeking joint appointment as Co-Lead Plaintiffs (*id.*, Dkt No. 38), and have also demonstrated that they are best positioned to cooperate productively and efficiently with the other class leads by joining in the instant Motion with, and endorsing the proposed leadership structure put forth by, the majority of the other presumptive lead plaintiffs in the Coordinated Action.

"The PSLRA expressly permits 'a group of persons' to be appointed lead plaintiff" and "courts in this District have recognized that a small group may appropriately be appointed lead plaintiff," on a case-by-case basis.  *Garnett v. RLX Tech. Inc.*, No. 21 Civ. 5125 (PAE), 2021 WL 3923541, at *5 (S.D.N.Y. Aug. 31, 2021); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015).  Courts have identified five factors to assess whether a group is "in the interests of the class: '(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.'"  *White Pine Invs. v. CVR Refin., LP*, No. 20 Civ. 2863 (AT), 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021).  "[C]ourts generally consider three [other] factors: '(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in

16

bad faith.'"  *Garnett*, 2021 WL 3913541, at *5.  In recent years, the Supreme Court has discussed group movants favorably and a recent Supreme Court decision (as well as District Courts decisions) has demonstrated the value of having multiple lead plaintiffs.  *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").

Here, Urman and the Partnership are an appropriate group.  First, the group is small, only two members. *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive.").  Further, given that Urman and the Partnership suffered the first and second largest losses, respectively, among any of the competing movants, they were not incentivized to group together merely for the purpose of aggregating their losses to secure the largest financial interest presumption under the PSLRA.  Moreover, the involvement of Urman and the Partnership, and their counsel, in developing the proposed case structure that is the subject to this motion demonstrates both sophistication and active participation, two factors that weigh in favor of allowing a group.  *E.g.*, *White*, 2021 WL 38155, at *2.  The proposed case structure also significantly reduces the risk of duplicative or wasteful legal efforts.  Moreover, they came together to best serve the class and to work together with the other Archegos Cases in order to promote efficiency and have the best chance for the best resolution for the class.

Since the Coordination Order, Urman and the Partnership have agreed that Pomerantz should serve as their lead counsel, as part of the larger leadership proposal set forth herein.  Urman and the Partnership understand that Scott+Scott and Hedin Hall may be Co-Chairing all the Archegos Actions as Coordinating Counsel.  As discussed herein, Pomerantz is highly experienced

in securities litigation and has demonstrated its willingness to cooperate with the other counsel in order to best serve the ViacomCBS Class.

**F.      iQIYI – Jiang and His Chosen Counsel, Scott+Scott, Should Be Appointed to Lead the iQIYI Class**

Yan Cai Jiang ("Jiang") should be appointed Lead Plaintiff for the iQIYI Class.  Jiang suffered the largest loss of any movant — over $205,000 in American Depository Receipt ("ADR") investments and additional losses on call options — and has made a *prima facie* showing that he satisfies Rule 23's requirements under the PSLRA.  *See id.*, Dkt. Nos. 22, 25 in 21-cv-10286.  Jiang has demonstrated that he can and will cooperate productively and efficiently with the other class leads by joining in the instant Motion with, and endorsing the proposed leadership structure put forth by, the vast majority of the other presumptive lead plaintiffs in the Archegos Cases.  Jiang's choice of counsel, Scott+Scott, is experienced in securities litigation (Laughlin Decl., Ex. 5) and has demonstrated its ability and willingness to cooperate in a civil manner to protect against duplicativeness, inefficiency, and in-fighting by leading the effort of the instant Motion and working cooperatively with the vast majority of the other firms involved in these cases.

**G.      Baidu – Watchel and His Chosen Counsel, Hedin Hall, Should Lead the Baidu Class**

Dr. Jeffrey Wachtel ("Wachtel") should be appointed Lead Plaintiff for the Baidu Class. Wachtel suffered the largest loss in Baidu of any competing movant — $215,000 — and has made a *prima facie* showing that he satisfies Rule 23's requirements.  *See id.*, Dkt. No. 24.  Moreover, Wachtel has demonstrated that he is well-positioned to cooperate productively and efficiently with the other class leads by joining in the instant Motion with, and endorsing the proposed leadership structure put forth by, the majority of the other presumptive lead plaintiffs in the Coordinated Action.  Wachtel's chosen counsel, Hedin Hall, should be appointed Lead Counsel for the Baidu Class.  Hedin Hall initiated the Archegos cases and has performed substantial work in their factual

investigation.  Hedin Hall is also highly experienced in securities and class action cases (Laughlin

Decl., Ex. 6) and has demonstrated his ability and willingness to cooperate in a civil manner to

protect against duplicativeness, inefficiency, and in-fighting by joining in the instant Motion with

the vast majority of the other firms involved in these cases.

### H. Discovery – The Oklahoma Funds and Jamal Pesaran, and Their Chosen Counsel, Scott+Scott and Grant & Eisenhofer, Should Be Appointed to Lead the Discovery Class

Oklahoma Firefighters Pension and Retirement System and Oklahoma Law Enforcement

Retirement System and Jamal Pesaran ("Pesaran") should be appointed Co-Lead Plaintiffs for the

Discovery Class.  Pesaran suffered the largest loss in Discovery common stock of any movant,

$224,417.  Dkt. No. 25-3 in 22-cv-00169.  The Oklahoma Funds together suffered $198,748 –

OFP lost $145,576 and OLERS lost $53,172.  *Id.*, Dkt No. 22-3.  Pesaran and the Oklahoma Funds

each made *prima facie* showings that they satisfy Rule 23's requirements.  *Id.*, Dkt. Nos. 21 & 24.

The group includes both an individual investor and public pension funds.  The Oklahoma

Funds therefore bring to the Archegos Cases an important element because Congress has stated a

specific desire for sophisticated institutional investors with a substantial financial interest to be

involved in securities class action litigation – their resources, experience, and incentive to

vigorously represent classes and oversee lead counsel's prosecution cases are thought to be of

particular benefit.  *See* S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690

("The committee intends to increase the likelihood that institutional investors will serve as lead

plaintiffs . . . ."); H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730,

733 (1995) (explaining that "increasing the role of institutional investors in class action will

ultimately benefit shareholders and assist courts by improving the quality of representation in

securities class actions"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 & n.23 (S.D.N.Y. 2005).

Moreover, similar to situation in Viacom, the proposed group in Discovery is small (only three members) and its members have been actively engaged in developing a organizational structure that will allow all of the Archegos Cases to efficiently and expeditiously move forward. These factors support appointment of a group. *White*, 2021 WL 38155, at *2. They have demonstrated that they are well-positioned to cooperate productively and efficiently with each other by entering into an agreement to work together that is memorialized in a joint declaration (annexed to the Laughlin Decl. as **Exhibit 3**). Moreover, the Oklahoma Funds have a pre-existing relationship. *Id.* at ¶3-4, 6. And, they have shown they can work cooperatively with the other class leads by joining in the instant Motion with, and endorsing the proposed leadership structure put forth by, the vast majority of the other presumptive lead plaintiffs in the Coordinated Action. Courts in this District have allowed groups under these circumstances. *See, e.g.*, *Garnett*, 2021 WL 3913541, at *5-6.

The Oklahoma Funds' and Pesaran's chosen counsel, Scott+Scott and Grant & Eisenhofer should be appointed Co-Lead Counsel for the Discovery Class. Grant & Eisenhofer is highly experienced in securities and class action cases (Laughlin Decl., Ex. 10) and has demonstrated its ability and willingness to cooperate in a civil manner to protect against duplicativeness, inefficiency, and in-fighting by joining in the instant Motion with the vast majority of the other firms involved in these cases. Scott+Scott's experience and strengths have been previously discussed and are discussed further *infra* at Section II.B. Finally, Scott+Scott and Grant & Eisenhofer have experienceworking together. *See In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 19-cv-2005-WHP (S.D.N.Y.) (appointed as co-lead counsel); *In re Universal Health Servs., Inc. Derivative Litig.*, No. 2:17-cv-02187 (E.D. Pa.) (settlement achieved as co-lead counsel).

II.     **A FORMAL LEADERSHIP STRUCTURE IS NECESSARY TO EFFECTIVELY LITIGATE THE ARCHEGOS CASES**

A.      **Formal Structure Needed**

This Court has recognized the need for a formal leadership structure for these seven all but identical cases and ordered the various plaintiffs to develop a proposal to efficiently litigate these matters.  The parties agree.  All parties agree that all seven cases are identical in legal theory and the allegations as to each issuer class are extremely similar.  *See* Coordination Order at 3 ("There is broad consensus among the parties that the Archegos Actions are all-but-identical[.]").  Plaintiffs uniformly agree that there should be "one [ ] complaint" and omnibus briefing on that complaint and that "much of the discovery will be identical."  Defendants have told the Court they too envision "a common motion to dismiss directed to all the actions."  Defendants' Letter at 2 (No. 21-cv-8413, ECF No. 37).

The Court has inherent and statutory authority to impose the organizational structure needed in this case.  The PSLRA, after all, is intended to "'empower[ ] a unified force to control the litigation.'"  *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 233 (D.D.C. 1999).  And, "'[a]lthough the [specific leadership] procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the class members.'"  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 407 (S.D.N.Y. 2004).  Indeed, there is precedent in this Court formal organization of closely-related, coordinated securities class actions governed by the PSLRA.  *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 294 (S.D.N.Y. 2003) (hundreds of actions consolidated by common issuer and coordinated under an Executive Committee and a Steering Committee below the Executive Committee).  Similarly,

Rule 23 of the FRCP makes clear that a key role of the Court in class actions is to facilitate fair and efficient conduct.  *See* Fed. R. Civ. P. 23(d)(1)(A) (empowering courts to "prescribe measures to prevent undue repetition or complication in presenting evidence or argument").  The Federal Judicial Center's Manual for Complex Litigation recommends "[i]nstituting special procedures for coordination of counsel early in the litigation [in order to] avoid [inefficiency] problems."  MANUAL FOR COMPLEX LITIG., §10.22.  The "types of appointments and assignments of responsibilities [ ] depend on many factors, but the ***most important*** is achieving efficiency and economy without jeopardizing fairness to the parties."  *Id.*, §10.221.

The Archegos Cases are the very kind of complex class actions that the Manual for Complex Litigation and Rule 23 speak to.  Together, they make up a large case, but there is overwhelming overlap between the complaints and allegations.  Defendants are not interested in conducting duplicative motion practice or discovery and any duplication would invariably harm the classes because their recovery would be negatively impacted by such inefficient conduct.  Finally, negotiations among plaintiffs' counsel to date has demonstrated that efficiencies will not easily emerge organically.  Without a formal leadership structure, outliers have the ability to hold up the cases for their own interests.  We have already seen that one outlier who will not agree to reasonable measures intended to benefit all the classes can stall progress on the case and cause tens or even hundreds of hours to be wasted.  Rather than be subject to the whims of each plaintiffs' counsel involved in the Coordinated Cases, it is important for the classes to be able to speak with one voice and to keep this case moving forward for the benefit of all the classes.

### B.    Scott+Scott and Hedin Hall Are Best Suited to Co-Chair the Executive Committee and Direct the Archegos Cases

Scott+Scott and Hedin Hall should act as Coordinating Counsel and Co-Chairs of the Executive Committee.  Scott+Scott and Hedin Hall, working together from the start, investigated

and initiated the Archegos Cases and filed the first-filed complaint against each of the seven issuers.  Scott+Scott and Hedin Hall represent class members in each of the seven issuer cases and filed motions to be appointed as lead counsel of each of the seven issuer cases.  Scott+Scott and Hedin Hall have worked diligently to communicate with and build consensus with all law firms and movants still involved in the Archegos Cases.  Scott+Scott spoke for all plaintiffs and lead plaintiff movants at the January 25, 2022 status conference held on these cases.

Scott+Scott and Hedin Hall have worked hard to build consensus and cooperative relationships among the counsel involved in these actions.  Seeing the benefits of cooperation early, Pomerantz agreed to work with Scott+Scott, Hedin Hall, and Schall Law for the benefit of all class members while the individual lead plaintiff motions were being briefed.  Dkt No. 38 in 21-cv-08897.  Later, after the Court's Coordination Order, and after many discussions, additional firms Johnson Fistel, Berger Montague and Rosca & Scarlota, and Grant & Eisenhofer all agreed that a formal organizational structure would best serve their respective classes and that Scott+Scott and Hedin Hall should act as Coordinating Counsel of all the Archegos Cases.[14]

Scott+Scott and Hedin Hall represent the presumptive (and/or stipulated) lead plaintiffs in four of the seven issuer cases, and indisputably represents the investor-movant with the largest financial interest in three, Baidu, iQIYI, and Discovery.  Scott+Scott and Hedin Hall also represent the second largest investor-movant in Viacom securities, who lost more than any other movant in any other issuer's securities.

Scott+Scott and Hedin Hall both have substantial experience in the prosecution of securities fraud class actions and other complex class action involving the U.S. financial markets.  Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions

---

[14]     Levi Korsinsky had adamantly refused to discuss any structure that would include anyone "above" them.

and recovered hundreds of millions of dollars for victims of corporate fraud.[15]  *See* Laughlin Decl.,

Exs. 5-6.  Scott+Scott's efforts have not gone unnoticed by the courts.  For instance, in *Cornwell*

*v. Credit Suisse Grp.*, No. 08-cv-03758(VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011),

a case in which Scott+Scott served as co-lead counsel and recovered $70 million for the class, the

Court stated:

> Lead Plaintiffs' counsel demonstrated that notwithstanding the barriers erected by
> the PSLRA, they would develop evidence to support a convincing case.  Based
> upon Lead Plaintiffs' counsel's diligent efforts on behalf of the Settlement Class,
> as well as their skill and reputations, Lead Plaintiffs' counsel were able to negotiate
> a very favorable result for the Settlement Class.  Lead Plaintiffs' counsel are among
> the most experienced and skilled practitioners in the securities litigation field, and
> have unparalleled experience and capabilities as preeminent class action specialists.

*Id.*

Scott+Scott has special expertise in complicated class actions involving the U.S. securities

markets that, like the Archegos Cases, are not the typical Section 10(b) or Section 11-type actions

that center on misstatements made to investors.  Scott+Scott has achieved $504.5 million in

settlements on behalf of investors in interest rate derivatives, Eurodollar futures and options, and

U.S. Treasury futures and options, among other financial instruments, in an antitrust class action

---

[15]     Current lead counsel appointments: *Jochims v. Oatly Grp. AB*, No. 21-cv-6360 (S.D.N.Y.); *Garnett v. Wang* [RLX Tech., Inc.], No. 21-cv-5125 (S.D.N.Y.); *Golubowski v. Robinhood Mkts., Inc.*, No. 21-cv-9767 (N.D. Cal.); *Evans v. Frequency Therapeutics Inc.*, 21-cv-10933 (D. Mass.); *Marechal v. Acadia Pharms. Inc.*, No. 3:21-cv-762 (S.D. Cal.); *Gupta v. Athenex, Inc.*, No. 21-cv-337 (W.D.N.Y.); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.); *Blake v. MacroGenics, Inc.*, No. 8:19-cv-2713 (D. Md.); *Kanugonda v. Funko, Inc.*, No. 2:18-cv-00812 (W.D. Wash.); *Corwin v. ViewRay, Inc.*, No. 1:19-cv-2115 (N.D. Ohio); *Silverberg v. DryShips Inc.*, No. 2:17-cv-04547 (E.D.N.Y.); and *Robinson v. Diana Containerships Inc.*, No. 2:17-cv-06160 (E.D.N.Y.).  Recoveries obtained by Scott+Scott include: *Mustafin v. GreenSky, Inc.*, No. 1:18-cv-11071 (S.D.N.Y.) ($27.5 million); *In re Evoqua Water Techs. Corp. Sec. Litig.*, No. 1:18-cv-10320 (S.D.N.Y.) ($16.65 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Irvine v. ImClone Sys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); and *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million).

alleging manipulation of the ISDAfix benchmark in *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, No. 1:14-cv-07126 (S.D.N.Y.).

"Hedin Hall LLP also has extensive experience in class actions, with a specialty in securities matters."  *See Luczak v. Nat'l Beverage Corp.*, No. 18-CV-61631-KMM, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018).  With offices in San Francisco and Miami, the firm has successfully litigated and resolved numerous class actions under the federal securities law in state and federal courts, here in New York and nationwide.  *See* Laughlin Decl.,  Ex. 6.

Hedin Hall currently serves as lead or co-lead plaintiffs' counsel in numerous securities class actions, as well as in several consumer matters in which multiple cases are proceeding on a consolidated or coordinated basis.  *See*, *e.g.*, *In re Maxar Techs., Inc. S'holder Litig.*, No. 19CV357070 (Cal. Super. Ct. Santa Clara Cnty.) (co-lead class counsel for certified class of investors prosecuting claims under the federal securities laws); *In re Hearst Commc'ns State Right of Publicity Statute Cases*, No. 1:21-cv-08895 (S.D.N.Y.) (co-lead counsel, in consolidated data-privacy matter comprised of five separate actions brought on behalf of nine putative classes); *Burke v. Meredith Corp.*, No. 4:21-cv-00335 (S.D. Iowa) (co-lead counsel in consolidated data-privacy matter comprised of eight separate actions brought on behalf of five putative classes).

Mr. Hall's personal experience includes over 12 years dedicated to complex securities litigation, including briefing and arguing numerous novel theories and issues of first impression and achieving hundreds of millions of dollars in class settlements on behalf of investor classes.

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiffs Group's motion in full.

DATED: March 30, 2022        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                           *s/* Thomas L. Laughlin, IV

                           Thomas L. Laughlin, IV
                           Rhiana L. Swartz

Jonathan Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Counsel for Lead Plaintiff Movants the Kellner Newcomer Partnership, Yan Cai Jiang, Dr, Jeffrey Wachtel, Jamal Pesaran, Sajed Hanif, Gregory Dee, and Po-Hsun Huang, Counsel for Plaintiffs Travis Florio, Michael Merson, Mark Ulanch, Alma Felix, Alison Scully, and Kevin Lee, Proposed Lead Counsel for the iQIYI Class, Proposed Co-Lead Counsel for the Discovery Class & Proposed Co-Chair of the Executive Committee*


**HEDIN HALL LLP**
David W. Hall (*pro hac vice pending*)
Armen Zohrabian (*pro hac vice* forthcoming)
Arun Ravindran (*pro hac vice* forthcoming)
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: 415-766-3534
Facsimile:  415-402-0058
dhall@hedinhall.com
azohrabian@hedinhall.com
aravindran@hedinhall.com

*Counsel for Lead Plaintiff Movants the Kellner Newcomer Partnership, Yan Cai Jiang, Dr, Jeffrey Wachtel, Jamal Pesaran, Sajed Hanif, Gregory Dee, and Po-Hsun Huang, Counsel for Plaintiffs Travis Florio, Michael Merson, Mark Ulanch, Alma Felix, Alison Scully, and Kevin Lee, Proposed Lead Counsel for the Baidu Class & Proposed Co-Chair of the Executive Committee*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Lead Plaintiff Movants Zhang Zhenming, Felix Urman, Tong B. Tran, and Kuan Iok Ieong, Counsel for Plaintiffs Igor Li, Kai Chen, and Su Yan, Proposed Lead Counsel for the ViacomCBS Class & Proposed Executive Committee Member*

**THE SCHALL LAW FIRM**
Brian J. Schall (*pro hac vice* forthcoming)
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Counsel for Lead Plaintiff Movants the Kellner Newcomer Partnership, Yan Cai Jiang, Dr, Jeffrey Wachtel, Jamal Pesaran, Sajed Hanif, Gregory Dee, and Po-Hsun Huang, Counsel for Plaintiffs Travis Florio, Michael Merson, Mark Ulanch, Alma Felix, Alison Scully, and Kevin Lee & Proposed Executive Committee Member*

**BERGER MONTAGUE PC**
Michael Dell'Angelo
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile:  215-875-4604
mdellangelo@bm.net

*Counsel for Lead Plaintiff Movant Syed Zaheer, Proposed Lead Counsel for the Gaotu Class & Proposed Executive Committee Member*

27

**JOHNSON FISTEL, LLP**
Ralph M. Stone
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: 212-292-5690
Facsimile:  212-292-5680
ralphs@johnsonfistel.com

Michael Ira Fistel, Jr. (admitted *pro hac vice*)
40 Powder Springs St.
Marietta, GA 30064
Telephone: 770-200-3104
Facsimile:  770-200-3101
michaelf@johnsonfistel.com

*Counsel for Lead Plaintiff Movants Alexander Shapovalov, S. Patel Trust U/A dated 8/4/2015, and Lei Bian, Proposed Lead Counsel for the Vipshop Class & Proposed Executive Committee Member*


**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Caitlin M. Moyna
485 Lexington Ave., 29th Floor
New York, NY 10017
Telephone: 646 722 8500
Facsimile:  646 722 8501
dberger@gelaw.com
cmoyna@gelaw.com


*Counsel for Lead Plaintiff Movants Oklahoma Firefighters Pension and Retirement System and Oklahoma Law Enforcement Retirement System, Proposed Co-Lead Counsel for the Discovery Class & Proposed Executive Committee Member*

**ROSCA & SCARLATO LLC**
Alan L. Rosca (*pro hac vice* forthcoming)
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122
Telephone: 216-946-7070
arosca@rscounsel.law

Paul Scarlato (*pro hac vice* forthcoming)
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: 216-946-7070

*Counsel for Lead Plaintiff Movant Syed Zaheer and Proposed Co-Lead Counsel for the Gaotu Class*

**KIRBY McINERNEY LLP**
Ira M. Press
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: 212-371-6600
ipress@kmllp.com

*Local Counsel for Lead Plaintiff Movant Syed Zaheer*

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

_s/_ Thomas L. Laughlin, IV
Thomas L. Laughlin, IV
