**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MERSON, Individually and on behalf of all others similarly situated, | Case No.: 1:21-cv-08752-PAC |
| Plaintiff, | Hon. Paul A. Crotty |
| v. | **MICHAEL KRUEGER'S BRIEF IN OPPOSITION TO THE PLAINTIFFS GROUP MOTION FOR LEAD PLAINTIFF IN THE TENCENT MUSIC ENTERTAINMENT GROUP CLASS ACTION** |
| GOLDMAN SACHS GROUP INC. and MORGAN STANLEY, | |
| Defendants. | |

THIS DOCUMENT RELATES TO:

> 1:21-cv-08413
> 1:21-cv-10286
> 1:21-cv-08618
> 1:21-cv-08897
> 1:21-cv-10791
> 1:22-cv-00169

Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway
New York, N.Y. 10006
T: (212) 363-7500
E: aapton@zlk.com

*Attorneys for Michael Krueger and*
*Proposed Lead Counsel for the Tencent*
*Music Entertainment Group Class*

## I.    PRELIMINARY STATEMENT.

The Plaintiffs Group's motion for lead plaintiff squarely contravenes the Private Securities Litigation Reform Act of 1995, no matter how "cooperative" its members claim to be. Fundamentally, Congress sought to eliminate "lawyer-driven" litigation with the enactment of the PSLRA and ensure that class actions under the Securities Exchange Act of 1934 are supervised by plaintiffs who will adequately protect the interests of the classes they represent. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-03 (S.D.N.Y. 2004) (citing S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. I 04-69 (1995), reprinted in 1995 U.S.C.C.A.N. 730). Although cooperation and coordination are paramount by and between the various classes in these related *Archegos Capital Management* actions, that consideration does not obviate the need to comply with federal law or otherwise allow these cases to be litigated in a way that prioritizes the interests of the lawyers over the aggrieved shareholders. Mr. Krueger's proposed Joint Prosecution Agreement (the "JPA" at ECF No. 41-2), as opposed to the Plaintiffs Group's "Leadership Structure," achieves the coordination desired by the Court while at the same time providing the various lead plaintiffs with the power to properly supervise their counsel and fulfill the fiduciary obligations they owe to their fellow shareholders.

The Plaintiffs Group's sole basis for opposing Mr. Krueger's motion to lead the *Tencent* action is that he refused to endorse their proposed Leadership Structure. Indeed, they acknowledge that Mr. Krueger holds the "largest financial interest" in the action with a sustained loss of $163,233.53 as compared to their nominee for lead plaintiff, Zhang Zhenming, who claims a loss of $82,089.00. *Compare* ECF No. 24-2 (Krueger Loss Chart) *with* ECF No. 28-1 (Zhenming Loss Chart). Yet they discount this fact on the basis that Mr. Krueger rejected the Leadership Structure.

According to the Plaintiffs' Group, Mr. Krueger's unwillingness to accept the Leadership Structure renders him "inadequate" to serve as the lead plaintiff in the *Tencent* action. ECF No. 44 at 14-15.

Contrary to the Plaintiffs Group's argument, Mr. Krueger's unwillingness to accept the Leadership Structure supports—and does not undermine—his motion for lead plaintiff. The Plaintiffs Group's Leadership Structure empowers the "Co-Chairs of the Executive Committee" to control the litigation of the various Issuer Actions even though they do not represent the classes in those individual Issuer Actions. This is highly problematic considering that conflicts undeniably exist between the classes in each of the Issuer Actions. It sets the stage for the "Co-Chairs of the Executive Committee" to make decisions in the litigation that will benefit one class at the expense of another. It also disenfranchises the lead plaintiffs in the Issuer Actions of the power to protect their interests and the interests of their fellow class members. This is why Mr. Krueger rejected the "Leadership Structure" and not that another firm was "above" his selected counsel, as the Plaintiffs Group glibly puts it. *Compare* Krueger Declaration, ECF No. 41-1 at ¶5 (explaining reasons for supporting proposed JPA), *with* Plaintiffs Group Brief, ECF No. 44 at 23 n.14.

It remains unknown whether any of the proposed lead plaintiffs comprising the Plaintiffs Group are aware of this defining term in the "Leadership Structure." In fact, the only declaration submitted in support of the Plaintiffs Group's motion comes from the proposed co-lead plaintiffs in the *Discovery* action submitted by an individual, Jamal Pesaran, and two Oklahoma pension funds. While the declaration makes reference to the need for coordination among the actions, there is no indication whatsoever that these seemingly sophisticated shareholders agreed to the terms of the "Leadership Structure" and, in particular, know that it allows attorneys representing shareholders in *other* Issuer Actions to control the litigation in *their* lawsuit.

None of the individual lead plaintiffs in the Plaintiffs Group have indicated their support for the "Leadership Counsel" or otherwise specified how they will adequately protect the interests

of their class members when, in reality, they will be unable to control the litigation in the Issuer Actions they are meant to be overseeing. This includes Mr. Zhenming who claims to be the "most adequate plaintiff" to serve as lead plaintiff in the *Tencent* action. Contrary to the Plaintiffs Group's claim, Mr. Zhenming is not suited to serve as the lead plaintiff because, unlike Mr. Krueger, he has already relinquished control over the litigation to attorneys whom do not even represent him.[1]

In sum, Mr. Krueger has been, and remains, the movant who should be appointed as the lead plaintiff in the *Tencent* action. In addition to the fact that he holds the "largest financial interest" in the litigation, he endorses a structure for coordination—the proposed Joint Prosecution Agreement or JPA—that allows the lead plaintiffs in each of the Issuer Actions to retain control over the case while at the same time providing for the coordination that this Court requested. Mr. Krueger respectfully requests that the Court grant his motion in its entirety.

## II. THE PSLRA REQUIRES COURTS TO PRIORITIZE CLASS INTERESTS OVER THE INTERESTS OF CLASS COUNSEL.

As part of the PSLRA, Congress' intent was to eliminate lawyer-driven litigation, replacing it with client-driven litigation by appointing as lead plaintiff the "most adequate plaintiff." *In re Razorfish, Inc. Sec. Litig.,* 143 F. Supp. 2d 304, 306-308 (S.D.N.Y. 2001). In enacting the PSLRA, Congress sought to:

> prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel. . . . The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.

---

[1] Mr. Zhenming also previously withdrew his motion to serve as lead plaintiff. ECF No. 34 (Notice of Non-Opposition). *See*, *e.g.*, *Barnette v. Arcimoto Inc.*, No. 21-CV-2143 (BMC), 2021 U.S. Dist. LEXIS 132202, at *5 (E.D.N.Y. July 14, 2021) (treating notices of non-opposition as withdrawals).

*Peters v. Jinkosolar Holding Co.,* 2012 U.S. Dist. LEXIS 38489, at \*11 (S.D.N.Y. Mar. 19, 2012). Thus, **"the primary focus must always be, not on the selection of counsel, but on the selection of lead plaintiff."** *Razorfish,* 143 F. Supp. 2d at 311 (emphasis added); *see also Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC,* 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) ("[T]he lead plaintiff provisions of the PSLRA were intended to curtail the vice of 'lawyer-driven' litigation, *i.e.,* lawsuits that, because of the huge potential fees available in contingent securities fraud class actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders they ostensibly represented.").

Specifically, the procedures defined in the PSLRA for appointing a lead plaintiff serve as the main vehicle for effectuating these goals. *See* Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Duties of Institutional Investors in Securities Litigation,* 56 Bus. Law. 1381, 1383 (2001) ("The heart of the PSLRA is the statutory procedures enacted to determine which party will be allowed to control securities class action litigation as the 'lead plaintiff.'"). "To help combat this problem, the lead plaintiff provisions of the PSLRA require[] that a court appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Credit-Based Asset*, 616 F. Supp. 2d at 463 (internal quotations omitted).

The "most adequate plaintiff" determination is to proceed by the Court in a straightforward two-step inquiry. *Burnham v. Qutoutiao Inc.,* No. 20-Cv-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at \*5 (S.D.N.Y. Nov. 4, 2020) (*citing Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004)). "First, the PSLRA requires the Court to adopt a rebuttable presumption that the 'most adequate plaintiff' is the one who (1) filed a timely complaint or motion for appointment, (2) "has the largest financial interest in the relief sought by the class" and (3) "otherwise satisfies

4

the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Second, this presumption may be rebutted upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Qutoutiao*. 2020 U.S. Dist. LEXIS 206752, at *5-6 (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)-(bb)).

## III.    MICHAEL KRUEGER IS THE "MOST ADEQUATE PLAINTIFF" TO SERVE AS LEAD PLAINTIFF IN THE *TENCENT* ACTION.

In this instance, Mr. Krueger is the "most adequate plaintiff" to serve as the lead plaintiff on behalf of the Class in the *Tencent* Action. Following the first step of the two-step inquiry discussed above, Mr. Krueger (1) timely filed a motion for appointment as lead plaintiff, (2) has the largest financial interest in the relief sought by the class, as he lost $163,233.53 from trading in Tencent during the Class Period, and (3) is otherwise typical and adequate pursuant to Rule 23.

While the PSLRA does not define "financial interest," courts in the Second Circuit and this District typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See e.g., Chahal v. Credit Suisse Grp. AG,* No. 18-CV-2268.,2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"). Out of all movants, Mr. Krueger claimed the largest financial interest, having lost $163,233.53, over $81,000 more than the closest movant, Zhang Zhenming.

5

By way of having the largest financial interest, this triggered the rebuttable presumption of "most adequate plaintiff" in Mr. Krueger's favor. To date, no proof by another class member has been presented that evidence how Mr. Krueger will not fairly and adequately protect the interests of the class nor that he is subject to some unique defense. In fact, recognizing as such, all competing lead plaintiff movants filed notices of non-opposition to Mr. Krueger's motion, including movant Zhenming. *See* ECF Nos. 32, 33, 34, 35. Thus, Mr. Krueger is entitled to be appointed lead plaintiff to represent the *Tencent* class.

Moreover, recognizing the need for the various classes in these related *Archegos Capital Management* actions to coordinate and cooperate, Mr. Krueger proposed the JPA for the different lead plaintiff counterparts. ECF No. 41-2. The premise of the JPA further evidences Mr. Krueger's adequacy to represent the *Tencent* class, as it clearly shows he is, and has been, willing to protect the interests of the unnamed Tencent class members and fulfill his fiduciary obligations – the main requirement of adequacy under Rule 23. *See* Fed. R. Civ. P. 23(a)(4) (The adequacy requirement is satisfied where the proposed lead plaintiff "adequately protect[s] the interests of the class."). *This is because the proposed JPA explicitly preserves the power of each lead plaintiff to adequately oversee and manage the litigation and their chosen counsel in each of their respective cases, as federal law under the PSLRA requires, while simultaneously allowing for cooperation with the other related Archegos Capital Management actions*. *See* ECF No. 41-2 at Section V ("Independence of Issuer Actions"); *see also Sklar v. Bank of Am. Corp.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (The PSLRA "requires the court to appoint a "lead plaintiff" …. who is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Again, the PSLRA was intended to ensure that parties with "significant financial interests in the litigation" would *oversee securities class actions and control the management of such suits,*

including the selection of counsel.") (emphasis added) (quoting *In re McDermott Int'l, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 21539, at \*3 (S.D.N.Y. Mar. 6, 2009)).

Only now that Mr. Krueger has proposed his own coordination plan, and rejected the "Leadership Structure" proposed by the Plaintiffs Group, is there opposition to Mr. Krueger's adequacy. To remedy this, the Plaintiffs Group proposes that Mr. Zhenming, a movant with half the financial interest of Mr. Krueger (and who previously did not oppose Mr. Krueger's motion), now be the representative of the *Tencent* class. But rejecting the so called "Leadership Structure" by no means evidences Mr. Krueger's inadequacy. Rather, as demonstrated above, it furthers his willingness and drive to fulfill his obligatory fiduciary duty under the PSLRA to protect the Tencent class, something the Plaintiff Group's Leadership Structure fails to do.

## IV. THE PLAINTIFF GROUP'S "LEADERSHIP STRUCTURE" DEPRIVES LEAD PLAINTIFFS OF THE ABILITY TO PROTECT THE INTERESTS OF THEIR CLASS MEMBERS.

Unlike the JPA proposed by Mr. Krueger, the Plaintiff Group's "Leadership Structure" deprives the plaintiffs in the related actions of the ability to protect the interest of their class members in their respective cases, which fundamentally contradicts the PSLRA lead plaintiff process. This is because the Plaintiffs Group's Leadership Structure empowers the "Co-Chairs of the Executive Committee" to control the litigation of the various Issuer Actions even though they do not represent the classes in those individual Issuer Actions, thus allowing disinterested parties, namely attorneys, to control the litigation.

Indeed, the purpose behind these PSLRA provisions is to "prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" *Weltz v. Lee,* 199 F.R.D. 129, 131 (S.D.N.Y.

7

2001); *see also In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir. 2001) ("the goal of the [PSLRA's]lead plaintiff provision is to locate a person or entity whose sophistication and ***interest in the litigation*** are sufficient to permit that person or entity to function as an ***active agent*** for the class[.]" (citing H.R. Conf. Rep. No. 104-369, at 32 (1995) *reprinted* in 1995 U.S.C.C.A.N. 730, 731; S. Rep. No. 104-98, at 10 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 689; Weiss & Beckerman, 104 Yale L.J. at 2105—06)). The PSLRA also sought to ensure that courts would appoint a lead plaintiff that "will play a ***meaningful role*** in limiting...lawyer-driven litigation...[and] who would be ***motivated*** to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation is delivered[.]" *Perez v. Hexo Corp.*, 2020 U.S. Dist. LEXIS 32381, at *5 (S.D.N.Y. Feb. 25, 2020) (emphasis added, internal quotations & citations omitted).

Allowing the "Co-Chairs of the Executive Committee" to control the litigation is highly problematic considering that conflicts undeniably exist between the classes in each of the Issuer Actions as each involve a separate security. This sets the stage for the "Co-Chairs of the Executive Committee" to make decisions in the litigation that will benefit one class at the expense of another, effectively stealing from the "lead plaintiffs" in the Issuer Actions the ability to control and manage the litigations and the unique conflicts that arise per security. It also disenfranchises the lead plaintiffs in the Issuer Actions of the power to protect their interests and the interests of their fellow class members, and does not allow them to be "active agents."  Given the purpose behind the PSLRA, allowing the Plaintiff Group's Leadership Structure to control the *Archegos Capital Management* actions would be entirely at odds with the statute. This is why Mr. Krueger rejected the "Leadership Structure" and not that another firm was "above" his selected counsel. *Compare* Krueger Declaration, ECF No. 41-1 at ¶5 (explaining reasons for supporting proposed JPA), *with* Plaintiffs Group Brief, ECF No. 44 at 23 n.14.

8

Additionally, the Plaintiffs Group's proposed Leadership Structure appears to be purely lawyer-driven as its motion provides nothing in the way of confirmation that the lead plaintiff nominees in the various actions even know about the proposed Leadership Structure, let alone support it. None of the individual lead plaintiffs in the Plaintiffs Group have indicated their support for the "Leadership Counsel" or otherwise specified how they will adequately protect the interests of their class members when, in reality, they will be unable to control the litigation in the Issuer Actions they are meant to be overseeing, and therefore unable to abide by their obligatory fiduciary duties imposed by the PSLRA. Nor is it clear to Mr. Krueger *why* these lead plaintiff nominees would be willing to relinquish control of the litigation over to attorneys whom they have not vetted, chosen, nor retained to represent their respective classes.

In fact, the only declaration from lead plaintiff nominees within the Plaintiffs Group was the one filed in the *Discovery* Action, and it was only signed by the three lead plaintiff nominees representing the *Discovery* class, and no one else. *See Discovery* Action, No. 1:22-cv-00169, ECF No. 31-3. While the declaration makes reference to the need for coordination among the actions, glaringly absent from the declaration is any indication that these seemingly sophisticated shareholders agreed to the terms of the "Leadership Structure" and, in particular, know that it allows attorneys representing shareholders in *other* Issuer Actions to control the litigation in *their* lawsuit. Further, is the lack of indication that these plaintiffs even received, reviewed, or approved the structure or if it was merely the only option presented to them.

Accordingly, the Court should not adopt the Leadership Structure proposed by the Plaintiffs Group, nor allow Mr. Krueger to be replaced in the *Tencent* action by Mr. Zhenming, a shareholder with half his financial interest who has already proven his inadequacy by agreeing to relinquish control of the *Tencent* litigation to attorneys whom do not even represent him.

9

## V.    CONCLUSION.

Mr. Krueger has demonstrated his entitlement to the presumption of "most adequate plaintiff" for the purposes of being appointed as the lead plaintiff in the *Tencent* action. He holds the "largest financial interest" in the litigation and has demonstrated his adequacy and typicality under Rule 23. His proposal for coordination among the various actions complies with the Court's previous directives while at the same time allowing him and his fellow lead plaintiffs to adequately fulfill the fiduciary obligations they owe to their respective class members. Consequently, the Court should grant Mr. Krueger's motion in its entirety.

Dated: April 7, 2022                                 Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Michael Krueger and*
*[Proposed] Lead Counsel for the Tencent*
*Music Entertainment Group Class*